637 So.2d 258 (1994)
Charles BERTRAM, Appellant,
v.
STATE of Florida, Appellee.
No. 93-02779.
District Court of Appeal of Florida, Second District.
April 6, 1994.
*259 Eugene L. Beil, of Beil & Hay, P.A., Hudson, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Donna Provonsha-Lentz, Asst. Atty. Gen., Tampa, for appellee.
PATTERSON, Judge.
Charles Bertram appeals from his judgment and consecutive life sentences for two counts of sexual battery on a child less than twelve years of age. Bertram raises six points on appeal, and three of his arguments demonstrate that the trial court erred in conducting Bertram's trial. Based on the trial court's errors in (1) admitting the victim's hearsay testimony, (2) admitting the medical opinion testimony of Nurse Gardner, and (3) limiting defense cross-examination and the presentation of defense witnesses, we reverse and remand for a new trial.
This case is based upon the accusations of Bertram's niece that Bertram had sexual contact with her. In a two-count amended information, the state charged Bertram, pursuant to section 794.011(2), Florida Statutes (1991), with placing his penis in his niece's mouth and with placing his finger in her vagina.
At the time of trial on July 27, 1993, the niece was eight years old. She testified that while at her grandmother's house in February 1992, her Uncle Charles put his finger in her private parts. Then he told her to come outside with him behind the pasture, and he put his private in her mouth. After the incident, the niece told her grandmother, her mother, and her father what happened, but none of them reported it to the authorities.
The mother testified that she did not report it because she was afraid of her brother, Charles. She explained that another brother, Andrew, reported it because he was mad at Charles. In fact, the mother acknowledged her statement that "there was some kind of deal put together and they wanted to get even so they put [the niece] on the spot to get Charlie."
During Detective Butler's testimony, the defense objected when it became apparent that the state was attempting to elicit hearsay statements of what the niece had told him. The defense argued that the state had failed to give the required notice pursuant to section 90.803(23)(b), Florida Statutes (1991), which provides a hearsay exception for a statement by a child victim. In response, the trial court suggested that the state was not "offering it for the truth of what was said." The state agreed with the trial court's prompting that the state was introducing the testimony "just for consistency."
Bertram correctly contends that it was reversible error to allow Detective Butler to testify to the niece's hearsay statements. Butler related what the niece had told him regarding the charged offenses. The state failed to file a notice of intent to introduce the hearsay as section 90.803(23)(b) *260 requires. In addition, the trial court made no specific findings of fact regarding the reliability of the statements. § 90.803(23)(c), Fla. Stat. (1991). Failure to make the required findings was clear error. Weatherford v. State, 561 So.2d 629, 633 (Fla. 1st DCA 1990); see Jaggers v. State, 588 So.2d 613 (Fla. 2d DCA 1991).
The trial court improperly determined that the niece's statements were admissible "just for consistency." The statements were not offered to rebut a charge of "improper influence, motive, or recent fabrication." § 90.801(2)(b), Fla. Stat. (1991). Bertram's defense was that the charges were fabricated, but not that they were recently fabricated. Bertram contends that the allegations were fabricated just prior to the niece's hearsay statement, which led to his arrest in November 1992.
Instead, the hearsay was offered to bolster the niece's credibility, and this was error. See Jenkins v. State, 547 So.2d 1017 (Fla. 1st DCA 1989). Since the niece's credibility was crucial, bolstering her testimony was not harmless error. See Weatherford, 561 So.2d at 633. Accordingly, this error requires reversal and remand for a new trial.
Next, we address Nurse Gardner's testimony, which Bertram contends was improper expert medical testimony. Gardner testified that she observed the doctor perform an examination of the niece and that she saw a "healed scar" in the vaginal area. This testimony was within her personal knowledge and based on her observation. It was not a medical opinion to say that she saw a scar. It was, however, improper to allow Gardner to give medical opinion testimony that the scar "could be" consistent with sexual battery. The opinion of what caused the scar required "special knowledge, skill, experience, or training" and Gardner was not qualified as an expert. See § 90.701, Fla. Stat. (1991). In Davis v. State, 569 So.2d 1317, 1319 (Fla. 1st DCA 1990), which the state cites, the mother and the grandmother, a nurse, observed a small, abnormal opening to the victim's vagina which they had not seen before. Nothing in Davis indicates that the mother or grandmother testified as to what caused the abnormal opening.
Should Nurse Gardner testify on retrial, she may testify as to her observations. If the state seeks to introduce any medical opinion testimony, the state must qualify an expert to testify.
We now turn to Bertram's contention that the trial court erred in limiting his right to cross-examine witnesses and to present his defense. Bertram's theory of defense was that his father instigated a plan to have the niece fabricate the charges. To support his claim, Bertram sought to elicit testimony about the extensive altercations he has had with his father.
It is error for a trial court to prohibit cross-examination when the facts sought to be elicitated are "germane to that witness' testimony and plausibly relevant to the theory of defense." Pace v. State, 596 So.2d 1034, 1035 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 244, 121 L.Ed.2d 178 (1992). Here, the trial court erred in limiting the cross-examination of the mother. She stated that "there was some kind of deal put together and they wanted to get even so they put [the niece] on the spot to get Charlie." Thus, cross-examining the mother about prior altercations between Bertram and his father was certainly germane to the mother's testimony and relevant to the defense theory that these charges were fabricated. Bertram also contends that he should have been allowed on cross-examination of Detective Butler to bring out that Bertram denied the accusations from the beginning and asserted that the charges were fabricated. The trial court did not allow this testimony because it was hearsay, and there was no error in this regard.
Finally, the trial court erred in not allowing the defense to call its own witnesses regarding the disputes between Bertram and his father. This testimony would have been relevant to Bertram's theory that his father caused the niece to fabricate the charges. The trial court had no authority to condition the introduction of this evidence on the appellant testifying on his own behalf. This error required Bertram to choose between *261 putting on defense witnesses and his right to remain silent.
Accordingly, we reverse Bertram's judgment and sentence for two counts of sexual battery and remand for a new trial. We note, for purposes of retrial, that the prosecutor did not make a golden rule argument, that the trial court properly admitted the similar fact evidence, and that the trial court properly instructed the jury.
Reversed and remanded.
THREADGILL, A.C.J., and FULMER, J., concur.