DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CARLOS ROMAN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-4288

[May 20, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. 10000394CF10A.

Carey Haughwout, Public Defender, and John M. Conway, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Mitchell A. Egber, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant appeals his conviction of one count of lewd or lascivious molestation of a child under the age of twelve. He argues, among other issues, that the trial court erred in denying his request to call two witnesses in support of his defense. We agree and reverse.

The State charged the defendant with one count of sexual battery and one count of lewd or lascivious molestation of a child under the age of twelve, his daughter. The charges stemmed from a single incident of alleged inappropriate touching that occurred two years before it was reported. Initially, the child did not say anything to the defendant or to her mother about the incident. The child indicated that she did not want her father to go to jail.

Two years later, however, the mother reported the incident to authorities. A week later, the mother and child went to the police station where the child gave a detailed statement. The child was inconsistent, however, about whether penetration had occurred. The child was not

examined by the sexual assault treatment center.

Testimony revealed that the defendant and the mother had been married for nearly ten years prior to reporting the incident. Shortly after the defendant's arrest, the mother opened a dating website account and began dating. Within months of the defendant's arrest, the mother filed for divorce, and remarried not long after the divorce was finalized.

Just prior to his arrest, the defendant requested a distribution of money from his 401(k) plan for investment purposes. The money did not arrive until after he was arrested. The mother deposited the money into their joint account and later withdrew it.

The defendant asked the mother to give $15,000 of the funds to his sons from a prior marriage; she initially refused to do so. Defense counsel asked the mother whether she used the money to get liposuction. The State made a relevancy objection, which the court sustained.

The defendant sought to call his first wife and son to testify. As defense counsel explained, the testimony would show the mother had motive and bias to have the defendant arrested. He believed she "brainwashed" the child to make up the charges. The trial court did not permit the testimony, finding it to be collateral and unrelated to motive.

Defense counsel proffered their testimony into the record. The sons had been living with the defendant prior to his arrest. His first wife moved in with the mother, the child, and her sons after the arrest. Both testified to the mother's dating behavior after the defendant's arrest and how the mother spent the monies taken from the defendant's 401(k) plan for plastic surgery. They both observed the mother begin dating immediately after the defendant's arrest and saw her bring men home. The mother told the first wife she met the men on a dating website.

The mother took trips to visit one of the men, leaving the children at home with the first wife. The first wife saw the mother being affectionate with one of men in front of the child. Once the first wife moved out, the mother began cohabiting with a man, whom she later married.

The defendant's son witnessed a difference in how the mother acted after the defendant went to jail. She began dating and acting single. The mother brought men home on a couple of occasions and was "drinking, kissing, and hugging" them on the couch with the child present.

The jury did not hear any of this testimony.

2

The defendant then testified. He adamantly denied ever touching the child inappropriately. He thought that his marriage to the mother was good in the beginning, however, he noticed changes in her behavior just prior to her reporting the molestation to the authorities. She made phone calls in the bathroom and seemed to have an excuse whenever he tried to be intimate with her. He believed she was having an affair. He confronted her about his suspicions.

He intended to use the money from his 401(k) plan for investment purposes, but changed his mind after he was arrested. He wanted to use the money for bond and an attorney, but the mother refused to give him the money. He sent people from their church to get the money from the mother, to no avail. Once he realized he was not going to get the money, he asked the mother to give some of it to his sons. The mother ultimately gave his first wife $15,000 for his sons.

Motions for judgment of acquittal were denied. The jury acquitted the defendant of the sexual battery count, but convicted him of lewd or lascivious molestation of a child under the age of twelve. The court sentenced him to twenty-five years of incarceration, followed by a life term of sex offender probation. From his conviction and sentence he now appeals.

The defendant argues the trial court erred in prohibiting his first wife and son from testifying. He argues the proffered testimony was relevant and admissible to show the mother's bias and prejudice, was not improper character evidence, and did not open the door to previously excluded *Williams* rule evidence.[1] The State responds that the trial court did not err because the witnesses were going to testify to collateral matters, and any error was harmless as the mother testified to the same facts. We agree with the defendant and reverse.

We review evidentiary rulings for an abuse of discretion. *McDuffie v. State*, 970 So. 2d 312, 326 (Fla. 2007) (citing *Fitzpatrick v. State*, 900 So.

---

[1] Prior to trial, the defendant moved to exclude reference to a prior case where he was acquitted of five counts of lewd and lascivious molestation and two counts of sexual battery against his stepdaughter. The trial court granted the motion, but then excluded the proffered testimony, in part, because it found it would open the door to the admission of the excluded *Williams* rule evidence. We do not agree that the admission of the proffered testimony would have affected the court's ruling on the *Williams* rule evidence.

2d 495, 514–15 (Fla. 2005)).

"Relevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2012). "All relevant evidence is admissible, unless provided by law." *Id.* § 90.402. "[W]here evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission." *Rivera v. State*, 561 So. 2d 536, 539 (Fla. 1990) (citing § 90.404(2)(a), Fla. Stat. (1985)).

There are different considerations presented when the question relates to the relevancy of evidence to show a reasonable doubt, rather than the commission of a crime. *Vannier v. State*, 714 So. 2d 470, 472 (Fla. 4th DCA 1998). "If there is any possibility of a tendency of evidence to create a reasonable doubt, the rules of evidence are usually construed to allow for its admissibility." *Id.* (citations omitted).

Showing an interest in the outcome can be used to demonstrate bias. *Mardis v. State*, 122 So. 3d 950, 953 (Fla. 4th DCA 2013). A party is given wide latitude to develop motive or bias in a witness's testimony. *Id.* (citation omitted).

Here, the proffered testimony may not have gone to a material fact, but the defendant wanted to use the proffered testimony to develop reasonable doubt. His theory was that the mother coaxed the child to make up the molestation charges so that the mother could be free to date other men. The proffered testimony would have been used to prove that upon the defendant's arrest, the mother immediately began dating, used the defendant's money for plastic surgery, and married as soon as her divorce was final, within months of the defendant's arrest. Thus, there was a "possibility of a tendency of evidence to create a reasonable doubt."

*Bertram v. State*, 637 So. 2d 258 (Fla. 2d DCA 1994), is persuasive. There, the defendant was charged with, and convicted of, two counts of sexual battery on his niece. *Id.* at 259. The defendant's theory of defense was that the niece made up the allegations after the defendant's father prompted her to. *Id.* at 260. The defendant wanted to introduce evidence of prior altercations with his father that would show that "'there was some kind of deal put together . . . so they put [the niece] on the spot to get [the defendant].'" *Id.* (first alteration in original). The Second District reversed, holding the trial court erred in not admitting the evidence as it was relevant to the defense theory. *Id.* at 260–61. We find the same result is

4

dictated here.[2]

*Reversed and Remanded for a new trial.*

DAMOORGIAN, C.J., and TAYLOR, J., concur.

\*         \*         \*

**Not final until disposition of timely filed motion for rehearing.**

---

[2] We further do not find the exclusion of this evidence harmless. *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). While the mother testified to some of the facts, her testimony, not surprisingly, was tempered, lacked detail, and was given in the light most favorable to her.